IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

HENRY JAMES COOPER,

     Plaintiff,

v.                                           CASE NO. 1:07-cv-00114-MP-GRJ

ANH DUONG, et al,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings, or in the alternative for Summary Judgment (doc. 94), to which Plaintiff has responded. (Doc. 100). Defendants were granted leave to file a reply, (doc. 102), which has also been considered.

The Court reserved a ruling on Plaintiff's Motion for Reconsideration, (doc. 99), in which he seeks leave to file a fifth amended complaint to assert claims against other medical personnel. (Doc. 87.) Defendants contend that granting leave to file a fifth amended would be futile because these claims similarly are unexhausted.

## I. Fourth Amended Complaint Doc. 71

Plaintiff alleges that from about August 28, 2006, through January 13, 2007, Defendant Duong failed to treat Plaintiff's right great toe for cellulitis which resulted in gangrene and the amputation of three toes on his right foot.[1] He alleges that Defendant McAllum failed to enact policies that would ensure against deliberate indifference to his serious medical needs.

---

[1] In his response to the motion, Plaintiff asserts that he has had to undergo two additional surgical revisions resulting in amputation below the knee. (Doc. 100, p. 3).

## II. Standard of Review

The Supreme Court recently expressed a new standard for determining

dismissal in <u>Bell Atlantic Corp., et al. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 1964-

65 (2007), holding:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not
> need detailed factual allegations...[f]actual allegations must be enough to
> raise a right to relief above the speculative level...

In doing so, the Court emphasized that it was not requiring a fact pleading of specifics,

but only enough facts to show that a claim to relief is plausible.  <u>Id.</u>, at 1974.  The

<u>Twombly</u> Court expressly abandoned a literal reading of the "no set of facts" language

announced in <u>Conley v. Gibson</u>.  <u>Id.</u> at 1969.  <u>See</u>  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-

6, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) (dismissal of a complaint should not be granted

unless it appears beyond doubt that the plaintiff can prove no set of facts in support of

his claims which would entitle him to relief).

The Eleventh Circuit has held that exhaustion should be raised on a motion to

dismiss; it is not a proper subject for summary judgment because it is not a decision on

the merits.  <u>Bryant v. Rich</u>, 530 F.3d 1368 (11th Cir. 2008).  Further, even though the

Court considers matters outside the pleadings to decide exhaustion, it is not necessary

to convert such a motion to one for summary judgment.  <u>Id</u>. at 1374-76.  The applicable

standard is the same as for a Rule 12(b)(6) motion.  <u>Id</u>. at 1376.

## III. Defendants' Exhibits Doc. 94

a)      <u>Affidavit of Rebecca Padgham (Exhibit D and D1)</u>

According to Ms. Padgham –  who is Management Analyst for the Bureau of

Inmate Grievance Appeals –  the following grievances and responses were the only

ones filed by Plaintiff that related to medical care.[2]

On December 22, 2006, a formal grievance was submitted to the Warden at Cross City in which Plaintiff complained of increased pain and swelling in his right foot, and in which he requested treatment by a specialist. (Exhibit B4-5). In the Warden's response, dated January 8, 2007, the Warden represents that the appeal was denied because Plaintiff was observed and treated appropriately resulting in his transfer to RMC for further evaluation. (Exhibit B3).

On June 13, 2007,[3] Plaintiff filed a grievance appeal, #07-6-16191, complaining that he had been bitten by a poisonous spider but Dr. Duong and other unnamed medical personnel did not treat him correctly and only gave him ibuprofen and prescribed epsom salt foot soaks when he was in great pain. Plaintiff stated in the grievance, "Now that all of my toes are cut off I am now in a wheelchair [since] Dec. 30 or 31 of 06." (Exhibit A1)

The response by the Warden, dated June 27, 2007, pointed out that the Plaintiff was not in compliance with the grievance procedure and therefore Plaintiff was directed to provide a copy of the formal grievance or the reason Plaintiff was bypassing the institution level. Plaintiff was given 15 days to correct the deficiency. (Exhibit A)

---

[2]  Plaintiff submitted other grievances concerning his medical care claims, and the responses thereto, which are set forth below. Defendants do not mention that Ms. Padgham did not acknowledge these grievances in her affidavit, which was apparently inaccurate.

[3]  Although the date written on the grievance by Plaintiff is 2006, the received stamp is June 19, 2007, and the response is dated 2007, as well. The Court will assume that "2006" is an error.

On July 9, 2007, Plaintiff filed an appeal, #07-6-16191, alleging the same complaints about his foot. (Exhibits B1-B2). The response, again, was that Plaintiff had failed to follow the procedures because he had failed to file the appeal within 15 days of the institutional response. (Exhibit B).

On September 17, 2007, Plaintiff filed another appeal, #07-6-24892, which failed to reference any formal grievance, but included a complaint of his treatment and the amputation of his toes in January. (Exhibit C). The September 27, 2007 response advised that Plaintiff had failed to follow the required procedures because he had not provided his institutional level grievance efforts. Plaintiff was given 15 days to resubmit the appeal. (Exhibits C1-C4).

### IV. Plaintiff's Response Doc. 100

a)      <u>Affidavit of Henry Cooper (Exhibit G-G2)</u>

Plaintiff avers that he completed the 9th grade and was not allowed to take his inmate handbook (which outlined the grievance procedure) to RMC on December 29, 2006. He filed a formal grievance on December 22, 2006, and did not appeal it because he was sent to RMC to see a specialist – as he requested –  and he thought he had received all of the relief he needed. Plaintiff did not receive a response to the grievance until he was released from the hospital, although the response was dated a month earlier. According to Plaintiff, he did not understand what he was supposed to do, the responses were confusing, and he thought he was supposed to go to sick call. Plaintiff asserts that he was never told to file a formal grievance at Cross City, and he ended up getting a lawyer to assist him in prosecuting his claims.

[Plaintiff's exhibits A- A3 are the same as Defendants' Exhibits B3-B5; Plaintiff's Exhibits B-B3 are the same as Defendants' Exhibits A-A1; Plaintiff's Exhibits C-C3 are the same as Defendants' Exhibits B-B2; and Plaintiff's Exhibits F-F5 are the same as Defendants' Exhibits C-C4.]

b)    Grievance dated 8/1/07 Log # 07-6-16191 (Exhibits D-D2)

Filed at New River CI, Plaintiff complains that he was bitten on his toe by a spider, but the doctors at Cross City said it was an ingrown toenail and gave him nothing for pain.  Dr. Duong told Plaintiff to soak his foot, but the pain did not stop, and he was unable to wear shoes.  Plaintiff's toes were amputated in December after which he was in a wheelchair.  The grievance is stamped "Received on August 6, 2007," at the Grievance Office in New River CI.

The grievance was processed as a formal grievance and the response dated August 10, 2007, states in relevant part:

> In response to your grievance received 8/6/07 concerning medical, the information provided has been received and reviewed.  Your formal grievance was carefully reviewed and we are uncertain as to what you are grieving.  If NRCI medical staff can assist you with your medical needs you need to let us know by signing up for sick call.  BASED ON THE FOREGOING YOUR GRIEVANCE IS HEREBY RETURNED.  Should you elect to obtain further administrative review you may do so by obtaining Form DC1-303, Request for Administrative Remedy or Appeal, as required by Chapter 33-103 and forwarding your appeal to the Bureau of Inmate Grievances, 2601 Blair Stone Road, Tallahassee, FL 32399-2500, within the specified time frame.
>
> RETURNED TO INMATE: 8/10/07
>
> The response is signed by Dr. W. Bala, Chief Health Officer, and Jack Sapp.

c)      Response to Grievance Log Number 07090210-012 (Exhibit E-E6).

In a formal grievance dated September 4, 2007, Plaintiff states that he is suing because of the actions of "the doctor at Cross City.  I have lost my toes because of a medical treatment and I'm also sending you a statement of what happen when the doctor didn't know how to treat a spider bit.[sic]"

The response:

In response to your grievance received 9/5/07 concerning medical, the information has been received and reviewed.  You were called out specifically on 9/17/07 to discuss the reasons for the formal grievances which do not grieve anything, just make statements.  As you and I discussed, since your arrival here at New River you have received good care and you agreed and stated you have received good care.  BASED ON THE FOREGOING YOUR GRIEVANCE IS HEREBY RETURNED WITHOUT ACTION.  Should you elect to obtain further administrative review you may do so by obtaining Form DC1-303, Request for Administrative Remedy or Appeal, as required by Chapter 33-103 and forwarding your appeal to the Bureau of Inmate Grievances, 2601 Blair Stone Road, Tallahassee, FL 32399-2500, within the specified time frame.

RETURNED TO INMATE:  9/18/07.

The response is signed by Dr. W. Bala, Chief Health Officer, and Jack Sapp.

## V.  Defendant's Response Doc. 102

[Exhibits A through G are copies of the grievances submitted previously by Defendants and will not be summarized again below]

a)      Orientation Acknowledgment Form (Exhibit H-H1)

Dated May 21, 1997, Plaintiff signed the form certifying that he received the inmate grievances information.

b)      Orientation Acknowledgment Form (Exhibit I-I1)

Dated March 21, 2007, Plaintiff signed the form certifying that he received the inmate grievances information.

## VI.  Analysis

Defendants contend that Plaintiff has failed to exhaust administrative remedies with regard to any medical claims asserted in the complaint. Plaintiff argues that he is uneducated, he did not have access to an inmate handbook to explain the grievance process, and he was confused.  He also contends that he did not appeal the formal grievance filed on December 22, 2006 because he essentially was granted the relief he sought when he was sent to RMC for evaluation and received treatment from specialists.[4]

To summarize the chronology of the grievance history and the events at issue, Plaintiff first complained about his medical treatment on December 22, 2006, by filing a formal grievance at Cross City.  (Doc. 94, Exhibits B4-5).  Defendants denied the grievance on January 8, 2007, on the grounds that he was being transferred to RMC for further evaluation.  As Plaintiff asserts in his affidavit, he did not appeal this decision because "I was given everything I asked for in my grievance."  (Doc. 100, Exhibit G).

No further grievance action was taken by Plaintiff until six months later on June 13, 2007, when he filed an appeal complaining about his lack of medical care in

---

[4]  The actual response to Plaintiff's December 22, 2006, formal grievance was a denial.  To complete the administrative process in medical emergencies, Plaintiff should then have appealed to the Secretary of the DOC.  In medical emergency cases, the FDOC allows for a two-step grievance process rather than the typical three steps, which is initiated by filing a formal grievance at the institution level, and then an appeal to the Secretary of the DOC.  Chapter 33-103.005, 006(3), Florida Administrative Code.

December 2006.  (Doc. 94, Exhibit A-A1).  This appeal was rejected because there was no formal grievance attached, the grievance having been filed six months before. Plaintiff was specifically advised what he need to do and was given 15 days to complete the process. Plaintiff, however, failed to follow these instructions.  Instead, he filed another appeal dated July 9, 2007, which was rejected on the same basis and with the same instructions concerning how to resubmit it correctly.  (Doc. 94, Exhibits B-B2).

Plaintiff then filed a formal grievance at New River CI on August 1, 2007, complaining of the lack of care at Cross City in 2006, but this grievance was returned after discussions between Plaintiff and staff about his medical care.  (Doc. 100, Exhibits D-D2).  Plaintiff was advised in the response that his grievance was being returned but that he could obtain additional relief. Plaintiff was specifically advised how to appeal, including information regarding the required form number and the time frame within which he must file the form. Despite being provided this information, however, Plaintiff did not appeal.

One month later on September 4, 2007, Plaintiff filed another formal grievance regarding the same issues. The grievance was again discussed with staff and the grievance returned with instructions on how to appeal.  (Doc. 100, Exhibits E-E6). Although Plaintiff appealed on September 17, 2007 he did not attach the previous grievances. This appeal was rejected with instructions regarding how to resubmit the appeal with copies of his efforts at the institutional level. Again Plaintiff did not follow these instructions.  (Doc. 100, Exhibits F-F5).

Relying upon  Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004),[5]

Plaintiff argues that he technically exhausted his administrative remedies because the

treatment he received at RMC was the relief he sought.[6] Plaintiff also contends he

could not seek monetary damages through the grievance process because monetary

damages are not an available remedy in the grievance process.

According to Plaintiff, he was not required to appeal a grievance decision that

essentially granted him the relief he sought.  This argument is at odds with decisions

from the Supreme Court and the Eleventh Circuit. In Booth v. Churner, 532 U.S. 731

(2001) the Supreme Court held that an inmate must complete any prison administrative

process, even when seeking only monetary damages which are not available through

the grievance process.  As the Court observed in Booth what must be exhausted under

the PLRA is the process, not the form of relief.  Id. at 739.  The Eleventh Circuit has

instructed that prisoners must "properly take each step within the administrative

process," and they "must file complaints and appeals in the place, and at the time, the

prison's administrative rules require."  Johnson v. Meadows, 418 F.3d 1152, 1158 (11th

Cir. 2005).

Further, Plaintiff's reliance upon  Goebert v. Lee County, 510 F.3d 1312 (11th

---

[5]  Ross has been abrogated by the holding in Jones v. Bock, 549 U.S. 199
(2007), for the point of law that failure to exhaust any claim requires dismissal of the
entire cause of action.

[6]  In Ross, the Tenth Circuit Court of Appeals found that a grievance complaining
of unsafe shower conditions was "exhausted" when the prison corrected the dangerous
condition by placing a mat in the area.  Id. at 1183, 1185.

Cir. 2007) to support his contention that he was not required to exhaust is misplaced.

In Goebert, the Plaintiff did not appeal the denial of her grievance because the appeal

process was not referenced in the inmate handbook and she could not have known that

an appeal of her grievance was an option until she obtained in discovery a copy of the

Jail Operating Procedures. The Eleventh Circuit held that an administrative remedy

that could not have been known through reasonable effort was not "available" within the

meaning of the PLRA. Id. at 1324. See also Turner v. Burnside, 541 F.3d 1077 (11th

Cir. 2008)(prisoner is not required to file additional grievances or take alternative

measures to exhaust when prison officials have demonstrated that they are not going to

abide by established procedures); Solliday v. Spence, case no. 4:07-cv-363-RH-WCS,

2009 WL 559526 (N.D. Fla. March 2, 2009)(serious threats of retaliation for filing a

grievance appeal renders that remedy "unavailable" and "lift[s] the exhaustion

requirement.").

 Plaintiff's formal grievance complaining of lack of medical care was *denied* on

January 8, 2007. Whether or not Plaintiff interpreted his transfer to RMC as granting

his grievance, the plain language in the response was that it was denied. Further,

although he contends that his treatment at RMC was all the relief he wanted, the

substance of his complaints, as set forth in his grievances and this lawsuit, was much

more than that. He complains that his pain was ignored and his condition was mis-

diagnosed, allowing for gangrene that caused the amputation of his toes, and the

subsequent amputation of his leg. The issues of denial of medical care by Dr. Duong

(and the policy claim against McAllum) were not resolved by his treatment at RMC.

Indeed, long after he was treated at RMC, he continued to complain about his lack of

care at Cross City in 2006.  Unfortunately, Plaintiff never adhered to the process for

getting his complaints properly before the grievance tribunal, and ultimately the

Secretary of the DOC.  One of the primary policies and purposes of requiring

exhaustion of administrative remedies at prisons is to give the institutions a fair

opportunity to correct their own errors and reduce the number of prisoner suits filed in

federal court.  Woodford v. Ngo, 548 U.S. 81, 94-97 (2006).  The DOC was not given

the opportunity to address the primary complaints regarding lack of medical care

because Plaintiff did not press these claims in the grievance process.

Plaintiff's characterization of the responses  as misleading or intentionally

confusing are completely at odds with the plain wording in the responses.  In each of

the responses Plaintiff was informed of the reason for the denial, the procedural steps

Plaintiff failed to follow, the procedures Plaintiff needed to follow to file the appeal, and

the applicable time period for doing so.  Plaintiff ignored the instructions and failed to

remedy the procedural deficiencies. Even assuming Plaintiff was unable to take the

necessary steps in a timely manner because of his medical condition or his transfer

between institutions, Plaintiff could have filed an out-of-time appeal and explained the

reasons he had missed the deadline.  See Harper v. Jenkin, 179 F.3d 1311, 1312 (11th

Cir. 1999); Guarino v. Hernandez, case no. 07-22498-civ, 2008 WL 4540417 (S.D. Fla.

Oct. 9, 2008) (prisoner has not exhausted remedies if he has not sought to file an out-

of-time appeal).

The Court is not persuaded that the return of his grievances in August and

September 2007, by staff at New River CI, was intended to thwart the administrative process. The responses clearly set forth what the institution believed to be a resolution of Plaintiff's complaints, and informed Plaintiff of the process he could undertake if he disagreed with the response.

Although Plaintiff contends he has only a 9th grade education, he does not argue that he cannot read or write. Moreover, he has successfully litigated this cause prior to the appearance of counsel on his behalf thus suggesting a sufficient mastery of written expression to articulate his complaints and follow procedure. If Plaintiff was confused at any step in the process or by any response he received from the prison, he could have sought assistance from the institutional staff through an inmate request concerning the necessary steps of the grievance process.

The Court recognizes that Plaintiff's medical issues in this case are extremely serious. Nonetheless, binding precedent from the Eleventh Circuit and the Supreme Court dictate that exhaustion is mandatory, not discretionary, and, therefore, a prisoner is required to take all administrative steps, follow all procedural rules and all meet all applicable deadlines. Woodford v. Ngo, 548 U.S. 81, 94-97 (2006); Porter v. Nussle, 534 U.S. 516 (2002); Booth v. Churner, 532 U.S. 731 (2001); Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998). Because Plaintiff has failed to do so the Court has no choice but to dismiss his claims for failure to exhaust.

**VII. Amendment**

Lastly, Plaintiff seeks leave to file a fifth amended complaint asserting claims against seven new defendants for alleged deliberate indifference arising from his care

at RMC, after he was transferred from Cross City in January 2007. Plaintiff, however, has not provided any information or even suggested that he has other grievances related to these proposed new claims which would change the result in this case. In short, any proposed amendments – like the claims in this case – would be subject to dismissal for failure to exhaust and, therefore, any amendment would be futile.

In light of the foregoing, it is respectfully **RECOMMENDED**:

That Defendants' Motion for Judgment on the Pleadings, or in the alternative for Summary Judgment (doc. 94) be **GRANTED**, and this cause be **DISMISSED** for failure to exhaust administrative remedies. Further, in light of this ruling, Plaintiff's Motion for Reconsideration (doc. 87) should be **DENIED**.

At Gainesville, Florida, this 1st day of November, 2010.


*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


## NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

*Case No: 1:07-cv-00114-MP-AK*